UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UTICA NATIONAL INSURANCE GROUP, as Subrogee of Pro Automotive Repair, Inc., | ) ) ) ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) ) | Civil Action No. 14-11855-KPN |
| BMW OF NORTH AMERICA, LLC, Defendant | ) ) ) ) | |

MEMORANDUM AND ORDER WITH REGARD TO
DEFENDANT'S MOTION TO DISMISS COUNTS III AND IV
(Document No. 11)
September 18, 2014

NEIMAN, U.S.M.J.

This is a products liability action instituted by an insurance company, Utica National Insurance Group ("Utica"), as subrogee for an automotive garage and sales company, Pro Automotive Repair, Inc. ("Pro Auto"), which allegedly sustained damages caused by what is claimed to have been a defective Mini Cooper manufactured and designed by the defendant, BMW of North America, LLC ("BMW"). Utica seeks redress for negligence (Count I), "[b]reach of [w]arranties" (Count II), "[s]trict [l]iability" (Count III), and violations of Mass. Gen. Laws ch. 93A (Count IV). The action, originally filed in the Hampden County Superior Court, was removed to this court by BMW pursuant to 28 U.S.C. § 1441. Before the court is BMW's motion to dismiss Counts III and IV pursuant to Fed. R. Civ. P. 12(b)(6), the motion being opposed by Utica with respect to Count IV only.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the jurisdiction of this court. For the reasons that follow, the court will allow BMW's motion, subject to Utica's right to seek to amend its complaint.

## I. STANDARD OF REVIEW

When faced with a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept the allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Coyne v. City of Somerville*, 972 F.2d 440, 443 (1st Cir. 1992). Moreover, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what that . . . claim is and the grounds upon which it rests.'" *Sepulveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 28 (1st Cir. 2010). The Supreme Court has made clear that, under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint that states a plausible claim for relief on its face will survive a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678. The Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Pursuant to these standards, the First Circuit has directed that motions to dismiss should be evaluated with a "two-pronged approach." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). First, mere "'legal conclusion[s]'" and "'[t]hreadbare recitals of the elements of a cause of action'" should be identified and disregarded. *Id*. (quoting *Iqbal*, 556 U.S. at 678-679). Then, based on the remaining, "[n]on-conclusory factual allegations," the court should analyze the "inference of liability

2

that the plaintiff is asking [it] to draw." *Id.* at 12-13 (citing *Iqbal*, 556 U.S. at 681). In doing so, a court should employ its own "'judicial experience and common sense,'" but only to determine whether the inference of liability is a reasonable one, that is, the court must excise unreasonable inferences but it may not eliminate improbable, or even incredible, allegations. *Id.* (citing and quoting *Iqbal*, 556 U.S. at 679, 681). If the inference of liability is reasonable, the claim "has facial plausibility" and should survive the motion. *Id.* at 12 (citing *Iqbal*, 556 U.S. at 679). *See also Medina-Velazquez v. Hernandez-Gregorat*, -- F.3d --, 2014 WL 4628506, at *3 (1st Cir. Sept. 17, 2014) (describing two-step approach to resolving motions to dismiss).

As to the Chapter 93A claim, the remaining count targeted here, the facts needed to create a reasonable inference of liability "must be determined from the circumstances of each case." *Spence v. Boston Edison Co.*, 459 N.E.2d 80, 87 (Mass. 1983) (citations and quotation omitted). Thus, "the boundaries of what may qualify for consideration as a c. 93A violation is a question of law," but the unfairness or deceptiveness of a "a particular set of acts, in their factual setting, is . . . a question of fact." *Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 40 (1st Cir. 2000) (quoting *Schwanbeck v. Federal-Mogul Corp.*, 478 N.E.2d 789, 803-804 (Mass.App.Ct. 1991)).

## II. BACKGROUND

The following facts come directly from the complaint, including one attachment thereto, and are stated in a light most favorable to Plaintiff. *Young v. Lepone*, 305 F.3d 1, 8 (1st Cir. 2002).

Pro Auto owned a 2007 Mini Cooper, which is a type of automobile manufactured

3

and designed by BMW. (Complaint at ¶¶ 5, 10.) On October 29, 2011, Pro Auto parked the Mini Cooper in its garage for the evening. (Id. at ¶ 6.) The garage housed tools, equipment, some vehicles owned by Pro Auto, and yet other vehicles belonging to customers that were being serviced by Pro Auto. (Id. at ¶ 7.) Early the next morning, the garage caught fire, severely damaging the structure and much of the personal property inside. (Id.) It was later determined that the fire originated within the Mini Cooper. (Id. at ¶ 9.) As a result of the fire, Pro Auto suspended business. (Id. at ¶ 8.) Utica thereafter paid the claim.

On January 11, 2012, BMW recalled certain Mini Coopers, including a 2007 model, the Mini Cooper S, because "[t]he electric auxiliary water pump that cools the turbocharger ha[d] an electronic circuit board that c[ould] malfunction and overheat" potentially causing "the circuit board [to] smolder which could result in a vehicle fire."[1] (Id. at ¶ 11, Exhibit A.) The one-page recall report, attached to the complaint, reveals that the 2007 Mini Cooper S had a total of two recalls, three investigations, nineteen complaints, and twenty-nine service bulletins. (Id. at Exhibit A.)

On April 13, 2013, Utica or its agent sent BMW a formal demand letter pursuant to Chapter 93A, § 9(3). (Id. at ¶ 26.) BMW denied and continues to deny liability. (Id.)

III. DISCUSSION

As an initial matter, the court questioned counsel at the hearing as to whether

---

[1] It is not alleged in the complaint that the Mini Cooper in question was a Mini Cooper *S*; at the hearing on the motion to dismiss, counsel for Utica, without contradiction by BMW, represented that it was.

4

Utica, when alleging that BMW committed "unfair or deceptive acts or practices" under Chapter 93A, was suing as subrogee for a consumer or for an entity engaged in trade or commerce. Counsel for Utica assured the court that Utica was taking the latter approach, that is, invoking its rights as subrogee of a business pursuant to Chapter 93A, § 11, not § 9. Accordingly, should its claim survive, Utica will be "held to a stricter standard than consumers in terms of what constitutes unfair or deceptive conduct." *Giuffrida v. High County Investor, Inc.*, 897 N.E.2d 82, 95 (Mass.App.Ct. 2008).

To be sure, this standard is a "vague[]" one, *see In re TJX Companies Retail Sec. Breach Litigation*, 564 F.3d 489, 497 (1st Cir. 2009), described as "the standard of the commercial market place" *see USM Corp. v. Arthur D. Little Systems, Inc.*, 546 N.E.2d 888, 897 (28 Mass.App.Ct. 1989), and, further distilled, as the line at which "rascality" becomes unacceptable, *see In re Pharmaceutical Industry Average Wholesale Price Litigation*, 582 F.3d 156, 185 (1st Cir. 2009), or at which unfairness takes on a "rancid flavor." *See Juarez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 281 (1st Cir. 2013). These vivid descriptions are the result of a standard that is, to borrow a phrase from Judge Learned Hand, chameleonic, reflective of the color of its environment. *See Commissioner v. National Carbide Corp.*, 167 F.2d 304, 306 (2d Cir.1948). As such, the court -- when supplying the relevant § 11 standard and determining whether BMW plausibly exceeded that level of unfair or deceptive conduct based on the facts of the complaint -- will keep in mind Pro Auto's status as an automotive retail and repair shop and BMW's status as a multi-billion dollar car manufacturer. *See Spence*, 459 N.E.2d at 87*.*

In opposition to BMW's motion to dismiss, Utica first argues that its Chapter 93A

claim is plausible because it is based on a breach of warranty claim, which, it posits, is a *per se* 93A violation. BMW responds that, unlike a consumer plaintiff under § 9, a plaintiff under § 11 needs to show something more than a mere breach of warranty to adequately plead a Chapter 93A violation. The court agrees with BMW.[2]

The Supreme Judicial Court held that a breach of warranty is not *per se* violative of § 11 of Chapter 93A, as distinguished from a claim under § 9; rather, "the question of liability . . . when a breach of warranty is alleged to be an unfair or deceptive act, must be resolved by reference to general principles of liability under § 11, which are discussed in [Massachusetts case law]." *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 640 N.E.2d 1101, 1106 (Mass. 1994). To be sure, a year prior to the *Knapp Shoes* decision, the Massachusetts Appeals Court held that "[a] breach of an implied warranty of merchantability is a violation of G. L. c. 93A, § 2," which is, in turn, actionable under § 11. *Alcan Aluminum Corp. v. Carlton Aluminum of New England, Inc.*, 617 N.E.2d 1005, 1009 (Mass.App.Ct. 1993). Tellingly, however, *Knapp* ignored *Alcan* when it cited the relevant Massachusetts caselaw to guide courts in determining the extent to which a breach of warranty might render the breach violative of § 11. And as at least two commentators have since explained, "[t]he *Knapp* decision put § 9 and § 11 breach of

---

[2]There is no merit to Utica's alternative argument that its Chapter 93A claim should survive solely on the basis of its allegation that BMW, in bad faith, has refused to acquiesce with respect to liability. That conduct might enhance the punitive nature of such a claim if Utica's subrogor were a consumer under § 9(3). *See Damon v. Sun Co., Inc.*, 87 F.3d 1467, 1485-1486 (1st Cir.1996). Further, as BMW itself notes, its "bad faith" could serve as an independent basis for a Chapter 93A claim were BMW an insurance company under Mass. Gen. Laws ch. 176D. However, BMW is not sued pursuant to § 9, nor is it alleged to be an insurance company for purposes of Chapter 176D. Accordingly, its settlement practices are of little moment.

6

warranty claimants on a different footing by eliminating per se Chapter 93A liability in commercial breach of warranty cases," so that "Chapter 93A analysis now depends on . . . a showing that the defendant acted in some significantly unfair or deceptive fashion." David E. Lurie & Kevin M. McGinty, *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.: Bringing Commercial Breach of Warranty Back into the Mainstream of Chapter 93A*, 40-Feb. B. B.J. 4, 25 (1996). Another treatise refers to the *Alcan* statement as a "rather startling conclusion [that] is not expounded upon." 3 Bruner and O'Connor on Construction Law § 9:9. Moreover, recent decisions overlook *Alcan*, holding instead that "[i]n the commercial context, neither negligence nor breach of contract/warranty, standing alone, establishes liability under Chapter 93A [§ 11]." *Spiniello Cos. v. Brico Indus., Inc.*, 511 F.Supp.2d 199, 203 (D.Mass. 2007). *See also Saint-Gobain Indus. Ceramics Inc. v. Wellons, Inc.*, 246 F.3d 64, 73 (1st Cir.2001) ("breach of warranty alone does not necessarily give rise to a Chapter 93A [§ 11] violation.").[3]

In sum, then, Utica must invoke something more than a mere breach of warranty to plead a plausible Chapter 93A, § 11 claim, that is, it must allege a breach of warranty "plus," where that "plus" is conduct by BMW which, if true, would render the breach repugnant to the milieu of the commercial marketplace. Accordingly, the court must first

---

[3]BMW cites two cases, *Linthicum v. Archambault*, 379 Mass. 381, 387-88 (1979) and *Roth v. Chrysler Corp.*, 11 Mass. L. Rptr. 223 (Mass. Super. Ct. 2000) for the proposition that a breach of warranty, without more, cannot even support a § 9 action. *Linthicum*, however, had held quite the opposite, namely, that a "material and substantial breach of warranty provides . . . ample basis for recovery under § 11," 379 Mass. 381 at 387, but was abrogated by *Knapp* for that very reason. *See Knapp*, 640 N.E.2d at 1104. As for *Roth*, it is not clear whether that case was pursued under § 9 or § 11, for neither section was mentioned; regardless, *Roth* stands for the proposition that a "*de minimis*" breach of warranty is not actionable under 93A. *Id.*, 11 Mass. L. Rptr. 223, at *3.

strip the complaint of its conclusory and unsupported allegations, for example, the allegations that "BMW negligently failed to warn . . . users of the Mini Cooper of its dangerous and defective characteristics," and "BMW failed to withdraw the Mini Cooper . . . from the marketplace after it knew or reasonably should have known [it] was not safe." (Complaint at ¶¶17(b),(e)). *See Rodriguez-Vives v. P.R. Firefighters Corps of P.R.*, 743 F.3d 278, 286 (1st Cir. 2014) ("A conclusory allegation . . . is one which simply asserts a legal conclusion, such as 'I was retaliated against,' not a specific factual allegation . . . ."). Once that is done, the court must scrutinize the remaining facts, taken as true, to determine if they support a reasonable inference that BMW engaged in such conduct. *See Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12-13 (1st Cir. 2011).

At best, Utica's complaint alleges that a breach of warranty defect caused damage and that, some seventy-five days later, BMW issued a recall to correct the defect. (Complaint at ¶¶ 7, 10, 11.) The court notes, although Utica has not, that the recall report attached to the complaint could support an inference that BMW might have received up to nineteen complaints related to this recall. But the dates of those complaints and their relationship to this particular recall are uncertain, thereby undermining any inference that BMW must have known of the defect before the date of loss here. In short, the court is not convinced that Utica has alleged facts sufficient to infer that pretermitted knowledge of the defect accompanied this particular recall.[4]

---

[4] At the hearing on the motion, Utica invoked *Cummings v. HPG Intern., Inc.*, 244 F.3d 16, 26-27 (1st Cir. 2001), for the proposition that it may plead a Chapter 93A claim for failure to warn without showing knowledge merely by alleging an injury caused by a manufacturer's "silence." It is, however, implicit in *Cummings*, and axiomatic of even a non-deceptive failure to warn claim, that the defendant has or should have knowledge of the defect. *See Vassallo v. Baxter Healthcare Corp.*, 696 N.E.2d 909, 923 (Mass. 1998)

8

Other products liability and deceptive practices cases have reached similar conclusions. *See Osness v. Lasko Prods. Inc.*, 868 F.Sup.2d 402, 409-410 (E.D. Pa. 2012) (plaintiff did not sufficiently plead a violation of the Illinois Consumer Fraud Act because the "fact that Lasko knew of the defect at the time of the 2006 recall is not sufficient" to show that it knew of the same defect in fans sold between July 2002 and December 2005); *Kowalsky v. Hewlitt-Packard Co.*, 771 F.Supp.2d, 1138, 1145 (N.D. Ca. 2010), *vacated in part*, 771 F.Supp.2d 1156 (N.D. Ca. 2011) (refusing to extrapolate knowledge of defect to times before the two dated customer complaints identified by the plaintiff); *Stickrath v. Globalstar, Inc.*, 2008 WL 344209, at *3 (N.D. Ca. Feb. 6, 2008) (allegation of knowledge "since at least 2003, if not earlier" was "just barely" plausible where plaintiff alleged that customers complained to defendant from 2003 to 2007); *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146-1148 (9th Cir. 2012) (explaining that, to plead knowledge, plaintiffs needed to allege more than the existence of undated customer complaints, the defendant's access to "aggregate information" regarding the defect, and the defendant's participation in an earlier lawsuit concerning the same defect in a different model); *McQeen v. BMW of North America, LLC*, 2014 WL 656619, at *5 (D. N.J. Feb. 20, 2014) ("If Rule 8(a), *Iqbal*, and *Twombly* are to have any force whatsoever, a complaint cannot state a [New Jersey Consumer Fraud Act] claim that requires the plaintiff plead knowledge by merely alleging that the defendant designed a defective product."). Here, there is simply an insufficient factual basis in Utica's operative complaint from which to infer that BMW knew of the defect before October 29, 2011, three months

---

(defendant only liable for failing to warn of reasonably foreseeable risks or those that could have been discovered by reasonable testing).

before it issued the recall; absent that inference, there is nothing else in the present complaint to support the Chapter 93A § 11 claim.

Granted, Utica attempts to repair this deficiency by way of additional factual allegations in its brief opposing BMW's motion to dismiss. In this vein, some courts have considered facts, allegations, and theories first mentioned in opposition to a motion to dismiss in anticipation of allowing a motion to amend an otherwise deficient complaint. *See, e.g.*, *Luthy v. Proulx*, 464 F.Supp.2d 69, 74-75, n.25 (D.Mass. 2006) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss'") (quoting *Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)). This court too might be inclined towards such a pragmatic tack were the factual allegations introduced in Utica's opposition well grounded, but they are not. For example, Utica asserts in its opposition that, "as a matter of common sense," BMW "elected not to disclose the defect in its Mini Cooper vehicles" in order to delay financial injury and, as well, that it is "beyond a leap of faith to believe" that BMW did not have knowledge of the defect on the date of loss. These rhetorical flourishes, in the court's view, are simply insufficient to plausibly allege, let alone show, BMW's preexisting knowledge of the defect and, *a fortiori*, its deception.

That said, Utica did refer to yet other facts at the hearing on BMW's motion to dismiss which could provide a stronger foundation on which to infer BMW's knowledge. Specifically, counsel represented that he had information of earlier Mini Cooper-related fires, expressed confidence in identifying more such instances through internet research, and made mention of certain information he has gleaned from other litigation and pre-litigation matters involving BMW. These facts, if properly alleged, might well come closer

to stating a Chapter 93A, § 11 claim on which relief could be granted. As is obvious, however, those facts are nowhere anchored in the present record.[5]

IV. CONCLUSION

For the foregoing reasons, the court allows BMW's motion to dismiss Counts III and IV. If Utica wishes to maintain a Chapter 93A, § 11 claim, it must first file a motion to amend its complaint, as it has requested in the alternative. That motion, if pursued, shall be filed within twenty-one days.

IT IS SO ORDERED.


DATED:   September 18, 2014

                                      /s/   Kenneth P. Neiman
                                      KENNETH P. NEIMAN
                                      U.S. Magistrate Judge

---

[5]The court notes that, on its own initiative, it looked more closely at the recall report exhibit attached to Utica's complaint, as it appears on the National Highway Traffic Safety Administration website, and found its way to the "Associated Documents" and "Associated Investigation[]" described therein. See Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) ("We may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."). Although this perusal yielded what appears to be some evidence in support of Utica's claim, the court is disinclined to undertake the work necessary to amend the complaint sua sponte. Utica itself has not cited these associated documents or investigations and will need to undertake that task on its own.